James C. Mahan
U.S. District Judge

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| BANK OF AMERICA, N.A., | Case No. 2:16-CV-1600 JCM (VCF) |
| Plaintiff(s), | ORDER |
| v. | |
| BTK PROPERTIES, LLC, et al., | |
| Defendant(s). | |

Presently before the court is counter claimant Cascade Research Partners, LLC's ("Cascade") motion for summary judgment. (ECF No. 72). Plaintiff/counter defendant Bank of America, N.A. ("BANA") filed a response (ECF No. 78), to which Cascade replied (ECF No. 89).

Also before the court is the defendant View of Black Mountain Homeowners Association's ("the HOA") motion for summary judgment. (ECF No. 73). BANA responded (ECF No. 80) and defendant Red Rock Financial Services, LLC ("Red Rock") joined (ECF No. 75), to which the HOA replied (ECF No. 88).

Also before the court is BANA's motion for summary judgment. (ECF No. 74). Red Rock (ECF No. 79), the HOA (ECF No. 81), and Cascade (ECF No. 82) filed responses, to which BANA replied (ECF Nos. 85, 86, 87).

I.      Facts

This case involves a dispute over real property located at 689 Principle Point Avenue, Henderson, Nevada 89102 (the "property"). On June 15, 2007, Carolyn Delon obtained a loan from Countrywide Bank, FSB in the amount of $246,976.00 to purchase the property, which was secured by a deed of trust. (ECF No. 73).

On August 4, 2011, Red Rock, acting on behalf of the HOA, recorded a notice of delinquent assessment lien, stating an amount due of $3,018.84. (ECF No. 73). On September 29, 2011, Red Rock recorded a notice of default and election to sell to satisfy the delinquent assessment lien, stating an amount due of $4,101.44. (ECF No. 73).

On November 10, 2011, an assignment of deed of trust was recorded wherein all beneficial interest in the deed of trust and note was assigned to BANA. (ECF No. 73). On November 16, 2011, BANA's prior counsel requested from Red Rock a payoff demand and account ledger. (ECF No. 73). On January 31, 2012, Red Rock responded stating a payoff amount due of $4,725.60. (ECF No. 73). BANA's prior counsel calculated the superpriority portion of the lien to be $810.00 and tendered that amount to Red Rock on February 9, 2012, which Red Rock allegedly rejected. (ECF No. 73).

On October 3, 2014, Red Rock recorded a notice of trustee's sale, stating an amount due of $4,443.81. (ECF No. 1 at 4–5). On November 7, 2014, defendant Cascade purchased the property at the foreclosure sale for $87,100.00. (ECF No. 73). A trustee's deed upon sale in favor of Cascade was recorded on November 17, 2014. (ECF No. 73).

On July 7, 2016, BANA filed a complaint (ECF No. 1), which it later amended on August 2, 2016 (ECF No. 7). In the amended complaint, BANA alleged nine causes of action: (1) quiet title/declaratory judgment against Cascade; (2) preliminary and permanent injunction against Cascade; (3) unjust enrichment against Cascade; (4) wrongful foreclosure against the HOA and Red Rock; (5) negligence against the HOA and Red Rock; (6) negligence *per se* against the HOA and Red Rock; (7) breach of contract against the HOA; (8) misrepresentation against the HOA; and (9) tortious interference with contract against all defendants. (ECF No. 73).

On February 28, 2017, the court dismissed claims (2) through (9) of BANA's first amended complaint. (ECF No. 48). The court dismissed claims (3) through (9) without prejudice for failure to first submit these claims to mediation. *Id.* On January 4, 2017, the parties completed NRED mediation without success. (ECF No. 61).

On July 25, 2017, BANA filed a second amended complaint alleging eight causes of action: (1) quiet title/declaratory judgment against Cascade and fictitious defendants; (2) unjust

enrichment against Cascade and fictitious defendants; (3) wrongful foreclosure against the HOA, Red Rock, fictitious defendants; (4) negligence against the HOA, Red Rock, fictitious defendants; (5) negligence *per se* against the HOA, Red Rock, and fictitious defendants; (6) breach of contract against the HOA and fictitious defendants; (7) misrepresentation against the HOA; and (8) tortious interference with contract against all defendants.  (ECF No. 65).

In the instant motion, BANA requests that the court enter summary judgment in its favor finding that Cascade's interest in the property, if any, is subject to the first deed of trust.  (ECF No. 74).  Conversely, Cascade and the HOA move for summary judgment in their favor, requesting that the court determine the foreclosure sale was valid and to quiet title in Cascade's favor.  (ECF Nos. 72, 73).

## II.     Legal Standard

The Federal Rules of Civil Procedure allow summary judgment when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a).  A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

For purposes of summary judgment, disputed factual issues should be construed in favor of the non-moving party.  *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 888 (1990).  However, to be entitled to a denial of summary judgment, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial." *Id.*

In determining summary judgment, a court applies a burden-shifting analysis.  The moving party must first satisfy its initial burden.  "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.  In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).

**James C. Mahan**
**U.S. District Judge**

By contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the non-moving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).

In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

**III.     Discussion**

In the HOA and Cascade's motions, they contend that summary judgment in their favor is proper because, *inter alia*, the foreclosure sale extinguished BANA's deed of trust pursuant to NRS 116.3116 and *SFR Investments*. (ECF Nos. 72, 73). The HOA and Cascade further contend that the foreclosure sale should not be set aside because the price paid at the foreclosure sale was commercially reasonable, the HOA complied with all notice requirements under NRS 116 and BANA received actual notice, BANA has not shown fraud, unfairness, or oppression as outlined in *Shadow Wood Homeowners Assoc. v. N.Y. Cmty. Bancorp., Inc.*, 366 P.3d 1105 (Nev. 2016) ("*Shadow Wood*"), BANA's attempted tender of the superpriority portion of the lien was not a true tender and was properly rejected, and Cascade is a bona fide purchaser. (ECF Nos. 72, 73). The court agrees.

Under Nevada law, "[a]n action may be brought by any person against another who claims an estate or interest in real property, adverse to the person bringing the action for the purpose of determining such adverse claim." Nev. Rev. Stat. § 40.010. "A plea to quiet title does not require any particular elements, but each party must plead and prove his or her own claim to the property in question and a plaintiff's right to relief therefore depends on superiority of title." *Chapman v. Deutsche Bank Nat'l Trust Co.*, 302 P.3d 1103, 1106 (Nev. 2013) (internal quotation marks and citations omitted). Therefore, for plaintiff to succeed on its quiet title action, it needs to show that its claim to the property is superior to all others. *See also Breliant v. Preferred Equities Corp.*, 918 P.2d 314, 318 (Nev. 1996) ("In a quiet title action, the burden of proof rests with the plaintiff to prove good title in himself.").

Section 116.3116(1) of the NRS gives an HOA a lien on its homeowners' residences for unpaid assessments and fines. Nev. Rev. Stat. § 116.3116(1). Moreover, NRS 116.3116(2) gives priority to that HOA lien over all other liens and encumbrances with limited exceptions—such as "[a] first security interest on the unit recorded before the date on which the assessment sought to be enforced became delinquent." Nev. Rev. Stat. § 116.3116(2)(b).

The statute then carves out a partial exception to subparagraph (2)(b)'s exception for first security interests. *See* Nev. Rev. Stat. § 116.3116(2). In *SFR Investments Pool 1 v. U.S. Bank*, the Nevada Supreme Court provided the following explanation:

As to first deeds of trust, NRS 116.3116(2) thus splits an HOA lien into two pieces, a superpriority piece and a subpriority piece. The superpriority piece, consisting of the last nine months of unpaid HOA dues and maintenance and nuisance-abatement charges, is "prior to" a first deed of trust. The subpriority piece, consisting of all other HOA fees or assessments, is subordinate to a first deed of trust.

334 P.3d 408, 411 (Nev. 2014) ("*SFR Investments*").

Chapter 116 of the Nevada Revised Statutes permits an HOA to enforce its superpriority lien by nonjudicial foreclosure sale. *Id*. at 415. Thus, "NRS 116.3116(2) provides an HOA a true superpriority lien, proper foreclosure of which will extinguish a first deed of trust." *Id.* at 419; *see also* Nev. Rev. Stat. § 116.31162(1) (providing that "the association may foreclose its lien by sale" upon compliance with the statutory notice and timing rules).

Subsection (1) of NRS 116.31166 provides that the recitals in a deed made pursuant to NRS 116.31164 of the following are conclusive proof of the matters recited:

(a) Default, the mailing of the notice of delinquent assessment, and the recording of the notice of default and election to sell;
(b) The elapsing of the 90 days; and
(c) The giving of notice of sale[.]

Nev. Rev. Stat. § 116.31166(1)(a)–(c).[1] "The 'conclusive' recitals concern default, notice, and publication of the [notice of sale], all statutory prerequisites to a valid HOA lien foreclosure sale as stated in NRS 116.31162 through NRS 116.31164, the sections that immediately precede and give context to NRS 116.31166." *Shadow Wood Homeowners Assoc. v. N.Y. Cmty. Bancorp., Inc*., 366 P.3d 1105 (Nev. 2016) ("*Shadow Wood*").

---

[1] The statute further provides as follows:

2. Such a deed containing those recitals is conclusive against the unit's former owner, his or her heirs and assigns, and all other persons. The receipt for the purchase money contained in such a deed is sufficient to discharge the purchaser from obligation to see to the proper application of the purchase money.

3. The sale of a unit pursuant to NRS 116.31162, 116.31163 and 116.31164 vests in the purchaser the title of the unit's owner without equity or right of redemption.

Nev. Rev. Stat. § 116.31166(2)–(3).

James C. Mahan
U.S. District Judge

1        Based on *Shadow Wood*, the recitals therein are conclusive evidence that the foreclosure

2    lien statutes were complied with—*i.e.*, that the foreclosure sale was proper. *See id.*; *see also*

3    *Nationstar Mortg., LLC v. SFR Investments Pool 1, LLC*, No. 70653, 2017 WL 1423938, at *2

4    (Nev. App. Apr. 17, 2017) ("And because the recitals were conclusive evidence, the district court

5    did not err in finding that no genuine issues of material fact remained regarding whether the

6    foreclosure sale was proper and granting summary judgment in favor of SFR."). Therefore,

7    pursuant to *SFR Investments*, NRS 116.3116, and the recorded trustee's deed upon sale in favor of

8    SFR, the foreclosure sale was proper and extinguished the first deed of trust.

9        Notwithstanding, the court retains the equitable authority to consider quiet title actions

10    when a HOA's foreclosure deed contains statutorily conclusive recitals. *See Shadow Wood*

11    *Homeowners Assoc.*, 366 P.3d at 1112 ("When sitting in equity . . . courts must consider the

12    entirety of the circumstances that bear upon the equities. This includes considering the status and

13    actions of all parties involved, including whether an innocent party may be harmed by granting the

14    desired relief."). Accordingly, to withstand summary judgment in the HOA and SFR's favor,

15    BANA must raise colorable equitable challenges to the foreclosure sale or set forth evidence

16    demonstrating fraud, unfairness, or oppression.

17        In its motion for summary judgment on its claim for quiet title/declaratory relief, BANA

18    sets forth the following relevant arguments: (1) the foreclosure sale is invalid because NRS

19    Chapter 116 is facially unconstitutional pursuant to *Bourne Valley Court Trust v. Wells Fargo*

20    *Bank, N.A.*, 832 F.3d 1154 (9th Cir. 2016), *cert. denied*, No. 16-1208, 2017 WL 1300223 (U.S.

21    June 26, 2017) ("*Bourne Valley*"); (2) BANA offered to pay the superpriority portion of the lien,

22    which adequately preserved the first deed of trust; (3) and that Cascade is not a bona fide purchaser.

23    (ECF No. 74). The court will address each in turn.

24        While the court will analyze BANA's equitable challenges regarding its quiet title, the

25    court notes that the failure to utilize legal remedies makes granting equitable remedies unlikely.

26    *See Las Vegas Valley Water Dist. v. Curtis Park Manor Water Users Ass'n*, 646 P.2d 549, 551

27    (Nev. 1982) (declining to allow equitable relief because an adequate remedy existed at law).

28    Simply ignoring legal remedies does not open the door to equitable relief.

**James C. Mahan**
**U.S. District Judge**

## A. Unconstitutionality of NRS 116

BANA contends that *Bourne Valley* renders any factual issues concerning actual notice as irrelevant. (ECF No. 74). BANA thus maintains that "[b]ecause the HOA [s]ale at issue here was commenced under the same statute the Ninth Circuit ruled facially unconstitutional in *Bourne Valley*, the HOA [s]ale could not have extinguished the [d]eed of [t]rust." *Id.*

BANA has failed to show that *Bourne Valley* is applicable to its case. Despite BANA's interpretation to the contrary, *Bourne Valley* did not hold that the entire foreclosure statute was facially unconstitutional. At issue in *Bourne Valley* was the constitutionality of the "opt-in" provision of NRS Chapter 116, not the statute in its entirety. Specifically, the Ninth Circuit held that NRS 116.3116's "opt-in" notice scheme, which required a HOA to alert a mortgage lender that it intended to foreclose only if the lender had affirmatively requested notice, facially violated mortgage lenders' constitutional due process rights. *Bourne Valley*, 832 F.3d at 1157–58. As identified in *Bourne Valley*, NRS 116.31163(2)'s "opt-in" provision unconstitutionally shifted the notice burden to holders of the property interest at risk—not NRS Chapter 116 in general. *See id.* at 1158.

Further, the holding in *Bourne Valley* provides little support for BANA as BANA's contentions are not predicated on an unconstitutional shift of the notice burden, which required it to "opt in" to receive notice. BANA does not argue that it lacked notice, actual or otherwise, of the event that affected the deed of trust (*i.e.*, the foreclosure sale). Rather, BANA merely argues that the HOA sale could not have extinguished the deed of trust because the sale was conducted pursuant to a facially unconstitutional statute. (ECF No. 74).

"A first deed of trust holder only has a constitutional grievance if he in fact did not receive reasonable notice of the sale at which his property rights was extinguished." *Wells Fargo Bank, N.A. v. Sky Vista Homeowners Ass'n*, No. 315CV00390RCJVPC, 2017 WL 1364583, at \*4 (D. Nev. Apr. 13, 2017). To state a procedural due process claim, a claimant must allege "(1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate procedural protections." *Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.*, 149 F.3d 971, 982 (9th Cir. 1998). However, BANA fails on the second prong.

Here, BANA has failed to show that it did not receive proper notice. BANA received a notice of default and election to sell, as well as a notice of sale from the HOA. Therefore, BANA's due process argument fails as a matter of law. *See, e.g.*, *Spears v. Spears*, 596 P.2d 210, 212 (Nev. 1979) ("The rule is well established that one who is not prejudiced by the operation of a statute cannot question its validity.").

Accordingly, BANA's challenge based on due process and *Bourne Valley* fails as a matter of law, and BANA's motion for summary judgment will be denied as it relates to these grounds.

### B. Rejected Tender Offer

BANA argues that its tender of the superpriority amount on February 9, 2012, prior to the foreclosure sale preserved the first priority of the deed of trust. (ECF No. 74). BANA thus maintains that Cascade took title to the property subject to BANA's deed of trust. *Id.*

The court disagrees. BANA did not tender the amount set forth in either the notice of default dated September 29, 2011 ($4,101.00) or the total stated in the payoff letter requested from Red Rock dated January 31, 2012 ($4,725.60). (ECF Nos. 73, 74-G). Rather, BANA tendered $810.00, an amount it calculated to be sufficient. *Id.*

Under NRS 116.31166(1), the holder of a first deed of trust may pay off the superpriority portion of an HOA lien to prevent the foreclosure sale from extinguishing that security interest. *See* Nev. Rev. Stat. § 116.31166(1); *see also SFR Investments*, 334 P.3d at 414 ("But as a junior lienholder, U.S. Bank could have paid off the SHHOA lien to avert loss of its security . . . ."); *see also, e.g.*, *7912 Limbwood Ct. Trust v. Wells Fargo Bank, N.A., et al.*, 979 F. Supp. 2d 1142, 1149 (D. Nev. 2013) ("If junior lienholders want to avoid this result, they readily can preserve their security interests by buying out the senior lienholder's interest." (citing *Carillo v. Valley Bank of Nev.*, 734 P.2d 724, 725 (Nev. 1987); *Keever v. Nicholas Beers Co.*, 611 P.2d 1079, 1083 (Nev. 1980))).

The superpriority lien portion, however, consists of "the last nine months of unpaid HOA dues *and maintenance and nuisance-abatement charges*," while the subpriority piece consists of "all other HOA fees or assessments." *SFR Investments*, 334 P.3d at 411 (emphasis added); *see*

*also 7912 Limbwood Ct. Trust*, 979 F. Supp. 2d at 1150 ("The superpriority lien consists only of unpaid assessments and certain charges specifically identified in § 116.31162.").

BANA merely presumed that the amount set forth in the notice of default or the statement of account included more than the superpriority lien portion and that a lesser amount based on BANA's own calculations would be sufficient to preserve its interest in the property. *See generally, e.g.*, Nev. Rev. Stat. § 107.080 (allowing trustee's sale under a deed of trust only when a subordinate interest has failed to make good the deficiency in performance or payment for 35 days); Nev. Rev. Stat. § 40.430 (barring judicially ordered foreclosure sale if the deficiency is made good at least 5 days prior to sale).

The notice of default recorded on September 29, 2011, set forth an amount due of $4,101.00. (ECF No. 73). The payoff letter dated January 31, 2012 set forth an amount due of $4,725.60. *Id.* Rather than tendering either of these amounts so as to preserve its interest in the property and then later seeking a refund of any difference, BANA elected to pay a lesser amount based on its unwarranted assumption that the amount stated in the notice or the statement of account included more than what was due. *See SFR Investments*, 334 P.3d at 418 (noting that the deed of trust holder can pay the entire lien amount and then sue for a refund). Had BANA paid the amount set forth in the notice of default or the payoff letter, the HOA's interest would have been subordinate to the first deed of trust. *See* Nev. Rev. Stat. § 116.31166(1).

**C. Commercial Reasonability**

The HOA and Cascade argue that the foreclosure sale was commercially reasonable because the sale price ($87,100.00) was not grossly inadequate because BANA has not presented any evidence of fraud, unfairness, or oppression. (ECF Nos. 72, 73).

NRS 116.3116 codifies the Uniform Common Interest Ownership Act ("UCIOA") in Nevada. *See* Nev. Rev. Stat. § 116.001 ("This chapter may be cited as the Uniform Common-Interest Ownership Act"); *see also SFR Investments*, 334 P.3d at 410. Numerous courts have interpreted the UCIOA and NRS 116.3116 as imposing a commercial reasonableness standard on foreclosure of association liens.[2]

---

[2] *See, e.g.*, *Bayview Loan Servicing, LLC v. Alessi & Koenig, LLC*, 962 F. Supp. 2d 1222, 1229 (D. Nev. 2013) ("[T]he sale for $10,000 of a Property that was worth $176,000 in 2004, and which

In *Shadow Wood*, the Nevada Supreme Court held that an HOA's foreclosure sale may be set aside under a court's equitable powers notwithstanding any recitals on the foreclosure deed where there is a "grossly inadequate" sales price and "fraud, unfairness, or oppression." 366 P.3d at 1110; *see also Nationstar Mortg., LLC v. SFR Invs. Pool 1, LLC*, 184 F. Supp. 3d 853, 857–58 (D. Nev. 2016). In other words, "demonstrating that an association sold a property at its foreclosure sale for an inadequate price is not enough to set aside that sale; there must also be a showing of fraud, unfairness, or oppression." *Id*. at 1112; *see also Long v. Towne*, 639 P.2d 528, 530 (Nev. 1982) ("Mere inadequacy of price is not sufficient to justify setting aside a foreclosure sale, absent a showing of fraud, unfairness or oppression." (citing *Golden v. Tomiyasu*, 387 P.2d 989, 995 (Nev. 1963) (stating that, while a power-of-sale foreclosure may not be set aside for mere inadequacy of price, it may be if the price is grossly inadequate and there is "in addition proof of some element of fraud, unfairness, or oppression as accounts for and brings about the inadequacy of price" (internal quotation omitted)))).

The *Shadow Wood* court did not adopt the restatement. In fact, nothing in *Shadow Wood* suggests that the Nevada Supreme Court adopted, or had the intention to adopt, the restatement. *Compare Shadow Wood*, 366 P.3d at 1112–13 (citing the restatement as secondary authority to warrant use of the 20% threshold test for grossly inadequate sales price), *with St. James Village, Inc. v. Cunningham*, 210 P.3d 190, 213 (Nev. 2009) (explicitly adopting § 4.8 of the Restatement in specific circumstances); *Foster v. Costco Wholesale Corp.*, 291 P.3d 150, 153 (Nev. 2012) ("[W]e adopt the rule set forth in the Restatement (Third) of Torts: Physical and Emotional Harm section 51."); *Cucinotta v. Deloitte & Touche, LLP*, 302 P.3d 1099, 1102 (Nev. 2013) (affirmatively adopting the Restatement (Second) of Torts section 592A). Because Nevada courts

was probably worth somewhat more than half as much when sold at the foreclosure sale, raises serious doubts as to commercial reasonableness."); *SFR Investments*, 334 P.3d at 418 n.6 (noting bank's argument that purchase at association foreclosure sale was not commercially reasonable); *Thunder Props., Inc. v. Wood*, No. 3:14-cv-00068-RCJ-WGC, 2014 WL 6608836, at *2 (D. Nev. Nov. 19, 2014) (concluding that purchase price of "less than 2% of the amounts of the deed of trust" established commercial unreasonableness "almost conclusively"); *Rainbow Bend Homeowners Ass'n v. Wilder*, No. 3:13-cv-00007-RCJ-VPC, 2014 WL 132439, at *2 (D. Nev. Jan. 10, 2014) (deciding case on other grounds but noting that "the purchase of a residential property free and clear of all encumbrances for the price of delinquent HOA dues would raise grave doubts as to the commercial reasonableness of the sale under Nevada law"); *Will v. Mill Condo. Owners' Ass'n*, 848 A.2d 336, 340 (Vt. 2004) (discussing commercial reasonableness standard and concluding that "the UCIOA does provide for this additional layer of protection").

1   have not adopted the relevant section(s) of the restatement at issue here, the *Long* test, which

2   requires a showing of fraud, unfairness, or oppression in addition to a grossly inadequate sale price

3   to set aside a foreclosure sale, controls. *See* 639 P.2d at 530.

4       Nevada has not clearly defined what constitutes "unfairness" in determining commercial

5   reasonableness.  The few Nevada cases that have discussed commercial reasonableness state,

6   "every aspect of the disposition, including the method, manner, time, place, and terms, must be

7   commercially reasonable." *Levers v. Rio King Land & Inv. Co.*, 560 P.2d 917, 920 (Nev. 1977).

8   This includes "quality of the publicity, the price obtained at the auction, [and] the number of

9   bidders in attendance." *Dennison v. Allen Grp. Leasing Corp.*, 871 P.2d 288, 291 (Nev. 1994)

10  (citing *Savage Constr. v. Challenge–Cook*, 714 P.2d 573, 574 (Nev. 1986)).

11      Nevertheless, BANA fails to set forth any evidence to show fraud, unfairness, or

12  oppression so as to justify the setting aside of the foreclosure sale.  Accordingly, the court finds

13  that the foreclosure sale was conducted in a commercial reasonable manner.

14      **D.  Bona Fide Purchaser Status**

15      Because the court has concluded that BANA failed to properly raise any equitable

16  challenges to the foreclosure sale, the court need not address Cascade's purported status as a bona

17  fide purchaser for value. *See, e.g.*, *Nationstar Mortg., LLC v. SFR Investments Pool 1, LLC*, No.

18  70653, 2017 WL 1423938, at \*3 n.4 (Nev. App. Apr. 17, 2017) (citing *Shadow Wood,* 366 P.3d at

19  1114).

20  **IV.    Conclusion**

21      In light of the foregoing, Cascade and the HOA have shown that they are entitled to

22  judgment as a matter of law.  The parties have provided the recorded foreclosure deed in Cascade's

23  favor, which is conclusive of the recitals contained therein, and has shown that Cascade's interest

24  in the property is superior to that of BANA's interest.  On the other hand, the court finds that

25  BANA has failed to show that it is entitled to judgment as a matter of law on its quiet title claim

26  against Cascade and the HOA.  Further, BANA has provided no grounds to justify setting aside

27  the foreclosure sale.  Therefore, the court will grant Cascade (ECF No. 72) and the HOA's (ECF

28

**James C. Mahan**
**U.S. District Judge**

No. 73) motions for summary judgment and deny BANA's motion for summary judgment (ECF No. 74).

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that Cascade's motion for summary judgment (ECF No. 72) be, and the same hereby is, GRANTED.

IT IS FURTHER ORDERED that the HOA's motion for summary judgment (ECF No. 73) be, and the same hereby is, GRANTED.

IT IS FURTHER ORDERED that the BANA's motion for summary judgment (ECF No. 74) be, and the same hereby is, DENIED.

The clerk is instructed to enter judgment accordingly and close the case.

DATED June 22, 2018.

_____

UNITED STATES DISTRICT JUDGE

James C. Mahan
U.S. District Judge

- 13 -